COMMONWEALTH *vs.* DONALD R. CAMERON, THIRD.

Bristol. September 14, 1993. - November 1, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Motor Vehicle*, Citation for violation of motor vehicle law. *Practice, Criminal*, Citation for violation of motor vehicle law.

Dismissal of a complaint charging certain motor vehicle violations was not required, although a police officer who waited several days to issue a traffic citation to the defendant had violated G. L. c. 90C, § 2, in failing to issue the citation at the time and place of the alleged violations, where there was an obvious, life-threatening injury involved; where no purpose of § 2 was being thwarted; and where the police were not seriously deficient or negligent in their handling of the matter. [315-318]


COMPLAINT received and sworn to in the New Bedford Division of the District Court Department on August 23, 1988.

On transfer to the jury session of the Fall River Division, the case was heard by *Robert L. Anderson*, J., on a motion to dismiss.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Cynthia A. Vincent*, Assistant District Attorney, for the Commonwealth.

*Lee J. Fortier* for the defendant.

WILKINS, J. For the first time in more than a decade, this court deals with the question whether a criminal complaint charging motor vehicle violations should be dismissed on the claimed ground that a police officer did not seasonably issue a citation to the defendant as required by G. L. c. 90C, § 2 (1992 ed.). The issue, which divided a panel of the Appeals Court (*Commonwealth* v. *Cameron*, 34 Mass. App. Ct. 44 [1993]), is here on further appellate review. Because of the seriousness of the injury sustained by a teenage boy whom

the defendant's vehicle struck and because the purposes of § 2 would not be thwarted if the complaint were not dismissed, the principles expressed in *Commonwealth v. Babb*, 389 Mass. 275 (1983), control, and we vacate the order of the District Court dismissing the complaint.

We summarize the essential facts which are more fully set forth in the opinion of the Appeals Court. *Commonwealth v. Cameron, supra* at 45-46. On April 27, 1988, Officer Soares of the Dartmouth police arrived at the scene of an accident in which a motor vehicle operated by the defendant had struck a teenage boy on a bicycle. The vehicle was damaged, and the boy, apparently seriously injured, was lying on the ground. The defendant, who had run behind a house, seemed to be in shock but gave his license and registration to the officer. After the defendant had left the scene with a friend, Soares and another officer worked at the accident scene for the next two hours. Soares learned that evening that the boy's life was in danger. The next day, after further investigation, Soares concluded that the defendant had been speeding and had crossed the solid double line in the road before striking the boy. No further investigation was needed before issuing a citation to the defendant. On April 29 and 30, Soares was not on duty. On May 1, he learned from the boy's mother that the boy's condition had stabilized. He then informed the defendant that a citation would be issued for operating to endanger, speeding, and failure to stay within marked lanes, and such a citation was issued that day.[1]

Section 2 provides that a citation should be given to the violator at the time and place of the violation and that fail-

---

[1]It appears that Soares believed that, if the boy died, he would have to issue a citation for negligent homicide, and, therefore, he delayed issuing any citation until that matter was resolved. In this, Soares was not wholly correct. A 1986 amendment had added to § 2 a provision that eliminated as a defense the failure of an officer seasonably to have given a citation to an alleged violator of certain motor vehicle laws if the violation caused one or more deaths. St. 1986, c. 620, § 18. The amendment did not eliminate the obligation to issue a citation in the event of a motor vehicle fatality. It only eliminated the defense that such a citation was not issued as required by § 2.

ure to do so "shall constitute a defense in any court proceeding for such violation." There are exceptions, such as when there is a reasonable need for additional time to determine the nature of the violation and "where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure." G. L. c. 90C, § 2.

One of the purposes of § 2, commonly called the "no-fix" law, "is to afford prompt and definite notice of the nature of the alleged offense to the putative violator." *Commonwealth* v. *Pappas*, 384 Mass. 428, 431 (1981).[2] The objective is "to prevent a situation in which a person cannot establish a defence due to his being charged with a violation long after it occurs." *Commonwealth* v. *Gorman*, 356 Mass. 355, 357-358 (1969). The judge who allowed the motion to dismiss seems to have relied in part on the defendant's state of shock to conclude that the defendant had no notice of the seriousness of the incident. In affirming the motion judge, however, the Appeals Court rightly did not depend on the absence of notice. Justice Dreben's dissent points out the reasons why the notice purposes of § 2 were fully satisfied in the circumstances. See *Commonwealth* v. *Cameron*, *supra* at 48-49 (Dreben, J., dissenting), citing *Commonwealth* v. *Pappas*, *supra* at 431-432. It is not reasonable to conclude that the defendant was not aware of the seriousness of the accident.

The more significant issue, and the one that divided the Appeals Court, concerns the question whether any circumstance, consistent with the purpose of § 2, justified the failure to deliver a citation until four days after the accident. The Appeals Court opinion rejected Officer Soares's mistaken belief that he had to discover whether the boy died before he could issue any citation and also rejected as adequate justification the two days' delay while Soares was off-

[2]The other purpose of the "no-fix" law is not involved in this case. There is no suggestion of manipulation or misuse of the citation process because of any unnecessary or unreasonable delay. See *Commonwealth* v. *Pappas*, 384 Mass. 428, 431 (1981).

duty. *Id.* at 46-47. It concluded that the Commonwealth had presented no justification for the failure to deliver or mail a citation the day after the accident. *Id.* at 47. The Appeals Court opinion does not cite this court's opinion in *Commonwealth* v. *Babb*, 389 Mass. 275 (1983), on which Justice Dreben relied in her dissent. *Commonwealth* v. *Cameron, supra* at 48-49 (Dreben, J., dissenting).

The *Babb* case stands for the proposition that, assuming the notice and abuse prevention purposes of § 2 are met, the apparent seriousness of the accident itself may justify a refusal to dismiss a complaint when an officer failed to issue a citation seasonably. In our *Babb* opinion, we said that "this court and the Appeals Court on numerous occasions have held that failure to comply with the statute is not fatal where the purposes of the statute have not been frustrated." *Commonwealth* v. *Babb, supra* at 283. "So also the cases make clear that the very seriousness of particular charges tends to minimize the importance of absolute observance of the procedures because, again, 'fix' is virtually excluded, and notice is implicit." *Id.*, quoting *Commonwealth* v. *Perry*, 15 Mass. App. Ct. 281, 284 (1983).[3] Indeed, the 1986 amendment of § 2 (St. 1986, c. 620, § 18, creating an exception for motor vehicle violation causing death) shows that, when the most serious of personal injuries is involved, the purposes of § 2 are made unimportant as against the public interest in the prosecution of such violators.[4]

Because there was an obvious, life-threatening injury in this case and no purpose of § 2 is being thwarted, and because the police were not seriously deficient or negligent in their handling of the matter, we conclude that there was jus-

---

[3]Our opinion in the *Babb* case does not analyze the issue in terms of the exceptions stated in § 2. It does not even quote them. Only implicitly does that opinion conclude that the justification exception of § 2 applies.

[4]The fact that in 1986 the Legislature amended § 2 (St. 1986, c. 620, § 18), less than four years after our *Babb* opinion, without changing that section to reverse our interpretation of § 2, warrants the conclusion that the Legislature accepted our interpretation. See *Waldman* v. *American Honda Motor Co.*, 413 Mass. 320, 323 (1992); *Crown Shade & Screen Co.* v. *Karlburg*, 332 Mass. 229, 231 (1955).

tification for excusing the three-day delay in issuing the cita-
tion. We thus disagree with an analysis of § 2 that measures
"justification" in this case simply in terms of the inadequacy
of the explanation that Soares took two days off and did not
understand that an effective citation for motor vehicle homi-
cide could be issued at any time if the injured boy should die.
In deciding this case, we look more broadly at the purposes
of § 2. See *Commonwealth* v. *Babb, supra* at 283-284; *Com-
monwealth* v. *Gorman,* 356 Mass. 355, 357-358 (1969) (pro-
cedures of § 2 inapplicable when there is an arrest, although
§ 2 does not say so). The delay of three days in issuing a
citation in the circumstances of this case does not justify the
dismissal of the complaint. A finding is required as a matter
of law that the officer was justified in issuing the citation de-
spite the delay. The order of the District Court dismissing
the complaint is vacated, and an order shall be entered deny-
ing the motion to dismiss the complaint.

*So ordered.*